# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Toby Cason, Jr. and Robert L. Stewart, ) | Civil Action No. 2:11-2241-DCN-BM |
| Plaintiffs, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| South Carolina State Ports Authority, ) <br> James I. Newsome, II, Stephen E. Connor, ) <br> Lorinda Rinaldi, and James Young, all in ) <br> their official and individual capacities, ) | |
| Defendants. ) | |

This action has been filed by the Plaintiffs, both former employees of the Defendant South Carolina State Ports Authority (SPA), asserting various claims of discrimination. On March 22, 2012, the Defendants filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P. Plaintiffs filed a memorandum in opposition to the Defendants' motion on April 13, 2012, following which the Defendants filed a reply memorandum on April 23, 2012. Defendants' motion is now before the Court for disposition.[1]

### Allegations of the Second Amended Complaint

Plaintiffs, both African Americans, allege that they were employed as lieutenants with the SPA Police Department, of which the Chief was the Defendant Rinaldi. Both Plaintiffs allege that they always had satisfactory SPA performance evaluations, including in their most recent evaluations in September 2009.

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



Plaintiffs allege that on September 6, 2009 an SPA Police Officer named George Farrey submitted a resignation letter in which he was highly critical of the SPA Police Department, including Chief Rinaldi, while praising both of the Plaintiffs. Plaintiffs allege that Rinaldi then personally interviewed each employee supervised by either of the Plaintiffs,[2] while employees supervised by other supervisors were not interviewed. Plaintiffs allege that these employees were "encouraged or coerced" during these interviews to make charges against the Plaintiffs, and that following their initial meetings with Rinaldi, the employees were then interviewed by both Rinaldi and the Defendant Young, the SPA Human Resources Manager. Plaintiffs additionally allege that they were both asked whether they had ever complained or made comments that Rinaldi had discriminated against black officers, and were also asked about their opposition to discriminatory practices. Plaintiffs allege that the Defendant Conner, Vice President of Security, Risk Management and Human Resources of the SPA, was aware of all aspects of the investigation as it occurred.

Plaintiffs allege that they were both suspended on November 3, 2009, with each Plaintiff's suspension letter citing a number of claimed violations, all of which Plaintiffs contend are false. Plaintiffs were then terminated on December 7, 2009. Plaintiffs allege that at no time during the investigation or before their suspensions or terminations, were they afforded any kind of a hearing or opportunity to rebut any of the charges against them. Plaintiffs further allege that non-African American employees were not disciplined under similar circumstances, and that some of the Defendants' reasons for Plaintiffs' terminations were also based on gender and/or race.

Plaintiffs allege that after their terminations, the SPA submitted a "Notification of Separation Due to Misconduct" concerning each Plaintiff to the Criminal Justice Academy on or about December 15, 2009. Plaintiffs allege that these notifications were signed by the Defendant Rinaldi, and were "on information and belief" approved by one or more of the other named individual Defendants. Plaintiffs allege that these notifications and attachments thereto "were largely or entirely

---

[2]Plaintiffs allege that Plaintiff Casson supervised approximately eighteen (18) employees while Plaintiff Stewart supervised over thirty (30) employees.

2



false".

Plaintiffs allege that the State of South Carolina has established and maintains a comprehensive system of licensing for law enforcement officers employed by, or considered for employment by, the State and its subdivisions, and that a central feature of this system is certification of law enforcement officers by the South Carolina Law Enforcement Training Counsel, to be carried out through the Criminal Justice Academy. Plaintiffs further allege that, by law, no state agency or subdivision of the State of South Carolina may employ any person to carry out law enforcement duties without certification by the Criminal Justice Academy, which certification includes a determination that the candidate is a person of good character. Plaintiffs allege that a certified law enforcement officer keeps his certification as long as he remains employed by the same agency, but that if he leaves that agency, his certification becomes dormant until he seeks or obtains a law enforcement job with another South Carolina agency, at which point the process of re-certification, or his ability to obtain re-certification, depends on the separating agency's report to the Criminal Justice Academy.

Plaintiffs allege that the separating agency must report a certified law enforcement officer's separation on one of two forms used by the Criminal Justice Academy; ordinary separations (which can include violations of agency policy) are reported on a form entitled "Notification of Administrative/Routine Separation", but if the separating agency said the separation was for "misconduct", the report is on a form entitled "Notification of Separation Due to Misconduct" and results in withdrawal of certification. Plaintiffs allege that in the case of an "Administrative/Routine Separation", re-certification is routine when the person is considered or hired for a law enforcement job by another agency, but that in the case of a "misconduct" separation, the person cannot be re-certified without a formal investigation by the Criminal Justice Academy. Until a person is re-certified, that person cannot be hired by another law enforcement agency. Plaintiffs allege that state law also provides additional authority to the Director of the Law Enforcement Training Counsel to refuse to certify persons reported for misconduct.



Plaintiffs allege that by virtue of the foregoing provisions of law and procedure, a law enforcement officer who separates from an agency without a designation of "misconduct" is easily re-employable by other agencies as a law enforcement officer, while a law enforcement officer who separates from a agency with a designation of "misconduct" is essentially unemployable in law enforcement because his designation is not in good standing and he has been stripped of the opportunity to have a certificate reissued. Further, Plaintiffs allege that the separating agency's designation of "misconduct" and that agency's descriptions of the circumstances of separation is made available to any future prospective law enforcement employers, and both Plaintiffs allege that "on information and belief" they have been refused consideration for other law enforcement jobs because of the prospective employer's awareness of the "misconduct" designation.

Plaintiffs also allege that the SBA did not provide a pre-termination hearing and does not have a post termination hearing process. Plaintiffs allege, however, that the SPA does have a grievance procedure, which both Plaintiffs timely invoked, and that both Plaintiffs had hearings before the SPA Grievance Panel in April 2010. Plaintiffs allege that the SPA was represented at these hearings by a trained HR official, while they had to either be represented by an employee of the SPA's HR office, or proceed pro se. Plaintiffs further alleged that they did not have notice of witnesses against them until the night before the hearing, that witnesses they requested were not produced, that no transcript or recording was made of the hearing or testimony, that "on information and belief" the Defendants interfered with the hearing panel and/or had ex parte contacts with the hearing panel, that much of the evidence supposedly supporting the charges against the Plaintiffs consisted of interview notes made by the Defendant Rinaldi or Young, even though numerous witnesses denied making the statements attributed to them in the interview notes, that several of the Port's witnesses testified favorably for the Plaintiffs, that the principle witness against the Plaintiffs was a person that the Defendants knew had serious credibility problems, and that none of the evidence that contradicted allegations in the "misconduct" reports was made available to the Criminal Justice Academy. Plaintiffs further allege "on information and belief" that the grievance panel



process routinely conducts "sham" hearings, with this practice being especially common in cases of discipline involving African American employees.

Plaintiffs allege that at the conclusion of the grievance proceedings, the grievance panel made recommendations to the Defendant Conner as well as the Defendant Newsom, President and CEO of the SPA, but that these recommendations were kept secret from the Plaintiffs. Plaintiffs allege that they each met with the Defendant Newsome on April 22, 2010, but allege "on information and belief" that Newsome "knew little or nothing about the evidence presented at the grievance panel". Plaintiffs allege that the Defendant Newsome upheld both Plaintiffs' terminations on April 27, 2010.

In their **First Cause of Action** (asserted against the Defendant SPA only), Plaintiffs allege that the Defendant's conduct constituted race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. In their **Second Cause of Action** (also asserted against the Defendant SPA only), Plaintiffs allege that the Defendant's conduct constituted gender discrimination in violation of Title VII. In their **Third Cause of Action** (asserted against the Defendants Newsome, Conner, Rinaldi, and Young in both their official and personal capacities), Plaintiffs allege pursuant to 42 U.S.C. § 1983 that the Defendants violated the Fourteenth Amendment to the Constitution of the United States by depriving them of their property and liberty interests without due process of law. In their **Fourth Cause of Action** (asserted against the Defendant SPA only), Plaintiffs allege that the Defendant's conduct was retaliatory in violation of Title VII.

Plaintiffs seek both injunctive and/or declaratory relief as well as monetary damages. See generally, Second Amended Complaint.

**Discussion**

In their motion to Dismiss, Defendants seek dismissal of Plaintiffs' Second and Third Causes of Action. When considering a motion to dismiss pursuant to Rule 12(b), the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences



in favor of the Plaintiffs. The motion can be granted only if Plaintiffs have failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). After careful review and consideration of the arguments presented pursuant to this standard, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants' motion should be **granted**.

## I.

### (Second Cause of Action)

Plaintiffs' Second Cause of Action is asserted against the Defendant SPA for gender discrimination in violation of Title VII. This is a disparate treatment claim. In order to survive the SPA's motion to dismiss and proceed with this claim the Complaint must set forth sufficient factual matters to state a plausible claim of intentional discrimination based on Plaintiffs' gender.

Under the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[3] Plaintiffs can meet this standard (at least for purposes of a motion to dismiss) through allegations sufficient to establish a prima facie case of discrimination;[4] i.e., by showing that 1) they are members of a protected class (here, male); 2) that they were performing their jobs satisfactorily; 3) that they were subjected to adverse employment actions; and 4) that other

---

[3] Plaintiffs could avoid proceeding under the McDonnell Douglas framework if they had direct evidence of gender discrimination by the Defendant. Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982). No direct evidence of gender discrimination is contained in any of the allegations of the Complaint. The court also notes that Plaintiff has made no argument for consideration of this claim under a "mixed-motive analysis. Cf. Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2003)(citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999)[declining to engage in a "mixed motive" analysis where neither party argued a mixed-motive theory of liability]. Therefore, Plaintiffs must prove their claim under the McDonnell Douglas framework.

[4] See Johnson v. Scotts Co., No. 11-20, 2011 WL 6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002).



employees who were not members of their protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996); Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); see Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Here, Plaintiffs allege in the Complaint that they are males; see Second Amended Complaint, ¶ 3; that they were performing their jobs satisfactorily; Id. at ¶ ¶ 16-21, 25; and that they were subjected to adverse employment actions; Id. at ¶ ¶ 33, 41. These allegations satisfy the first three elements of the prima facie case. However, the Complaint fails to set forth any factual allegations to establish or set forth circumstances surrounding the alleged adverse employment actions sufficient to give rise to an inference of unlawful discrimination against them based on their gender. Plaintiffs allege that Chief Rinaldi is female; Second Amended Complaint, ¶ 8; that Rinaldi as Chief had the power to discipline all employees in the department, including termination; Id. at ¶ 15; that neither Plaintiff had any performance or job related problems, Id.; at ¶ ¶ 16-21; that Rinaldi conducted a sham and biased investigation against Plaintiffs; Id., at ¶ ¶26-32; and that this allegedly bogus investigation was used as an excuse to justify Plaintiffs' terminations; Id. at ¶ ¶ 39, 41. However, the only allegation Plaintiffs then make to establish that Rinaldi's actions were based on their gender is where they allege that "[s]ome of Defendant's reasons for termination were based on Plaintiffs' gender". Id. at ¶ 44. No factual basis for this conclusory statement is contained in the Complaint. Other than pointing out that Plaintiffs are males and Rinaldi is a female, there are no other allegations that specifically tie her conduct, although alleged to have been improper, to a gender



based animus.[5] See Bailey v. Walmart #2555, No. 06-603, 2008 WL 637783 at * 3 (D.Del. Mar. 7, 2008)["The mere fact that [the adverse decision-makers] were of a different race than [the employee] . . . is insufficient to permit an inference of discrimination."] (quoting Coulton v. Univ. of Penns., 237 Fed. Appx. 741, 747-748 (3d Cir. 2007)); Iadimarco v. Runyon, 190 F.3d 151, 156 (3d Cir. 1999) [same]; cf. Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000)[Without a showing that the reasons for their alleged mistreatment were discriminatory, Plaintiffs cannot establish a prima facie case for relief].

In their response brief, Plaintiffs argue that the factual allegations of the Complaint are sufficient to support a circumstantial case of gender discrimination, and further assert that "specific details behind the facts alleged" are known to the Defendants and were produced as part of the Plaintiffs' grievance proceedings. Plaintiffs' Brief, p. 5. However, Plaintiffs have set forth no such "specific details" in their Second Amended Complaint. See Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]. Rather, Plaintiffs simply allege that Rinaldi fired them for no just cause, and then conclusorily assert that "[s]ome of Defendant's reasons for [their] termination were based on gender." Second Amended Complaint, ¶ 44. Such a general and conclusory allegation is not sufficient to give rise to a plausible claim. See Twombly, 550 U.S. at 555 ["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"]; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) [noting that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint

---

[5]The undersigned is constrained to note that most of Plaintiffs' allegations relate to purported facts supporting their asserted race discrimination claim. See Second Amended Complaint, ¶ ¶ 15, 34, 36, 43.

8



to cross "the line between possibility and plausibility of entitlement to relief"], quoting Twombley, 550 U.S. at 557 (internal quotations marks omitted); Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) ["[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"].

Therefore, the Defendant SPA is entitled to dismissal of this cause of action. Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976) ["[W]here the claims in a complaint are insufficiently supported by factual allegations, the claims may be properly dismissed by summary dismissal"].[6]

## II.

### (Third Cause of Action)

In their Third Cause of Action, Plaintiffs assert claims against the named natural Defendants for alleged "due process violations" under 42 U.S.C. § 1983. Section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief". City of Monterey v. Del Monte Dues at Monterey, Ltd., 526 U.S. 687, 707 (1999). However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method of vindicating federal rights

---

[6] In many instances, where the undersigned concludes that sufficient allegations have not been asserted to give rise to an inference that all of the required elements of a discrimination claim are present, a recommendation is made that the Plaintiff should be given one last opportunity to amend their Complaint to cure this defect before a dismissal with prejudice is granted. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing Harrison v. United Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988); see also Jones v. South Carolina Dep't of Corrections, No. 07-1876, 2009 WL 890646 at * 2 (D.S.C. Mar. 30, 2009)[Allowing Plaintiff the opportunity to file an amended complaint prior to dismissing case]; Griffith v. Griffith, 506 S.E.2d 526, 529 (S.C.Ct.App. 1998)[Leave to amend "shall be freely given when justice so require and [it] does not prejudice any other party]. However, in this case that opportunity has already been provided, with the Court even having gone so far as to have a conference call with counsel which resulted in the mooting of the initial motion to dismiss with Plaintiffs being granted an opportunity to correct any defects in the Complaint. See Order filed February 29, 2012. That previous action is what led to the filing of the Second Amended Complaint. Therefore, it would not appear that any additional opportunities for Plaintiffs to supplement the allegations of the Complaint would be either beneficial or justified.



elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994), "quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). Therefore, while the natural Defendants named in the Complaint, as state employees, are all subject to suit under § 1983, this claim can only proceed if Plaintiffs have asserted a viable due process claim. Albright, 510 U.S. at 271.

Plaintiffs due process claim is based on alleged violations by the named natural Defendants of their constitutionally protected "property" and "liberty" interests. Specifically, Plaintiffs allege in their second Amended Complaint that by submitting the "Notification of Separation due to Misconduct" to the Criminal Justice Academy, the Defendants 1) deprived them of "liberty" by placing a stigma on Plaintiffs' reputations which has been and will continue to be disseminated to the relevant public; that is, prospective law enforcement employers; and 2) deprived them of "property" by withholding from them a certificate of good standing, which prevents them from obtaining any other job in law enforcement. Plaintiffs allege that both of these actions were taken without providing Plaintiffs with due process of law. See generally, Second Amended Complaint, ¶¶ 47-68.[7] Defendants assert, inter alia, that they are entitled to dismissal of this cause of action because Plaintiffs have failed to set forth a cognizable liberty or property claim in the allegations of the Second Amended Complaint. The undersigned is constrained to agreed.

**Property Claim**. With respect to Plaintiffs' "property" claim, Plaintiffs contend that denying them a certificate of good standing prevents them from obtaining employment in law enforcement, thereby giving rise to a property claim. However, there are no allegations in the Complaint to establish that the Plaintiffs were anything other than at-will employees, as Plaintiffs make no claim that they had any type of employment contract with the SPA. See also, Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment']. Therefore, Plaintiffs' employment with the SPA was not a constitutionally protected property interest for purposes of the due process clause, and their

---

[7]Plaintiffs set forth how the grievance procedure they were provided allegedly failed to provide them with due process in the Second Amended Complaint, at ¶¶ 69-85.

10



terminations do not give rise to a property claim. Newton v. South Carolina Department of Public Safety, et al., No. 10-1781, 2011 WL 4435761, at * 3 (D.S.C. Sept. 23, 2011)["At-will employment is not a property interest for purposes of the due process clause"].

Given that they had no property interest in their employment, Plaintiffs instead try to establish a property due process claim in the Complaint by alleging that being denied a certificate of good standing is a denial of their federally protected property rights, because they cannot obtain another job in law enforcement without a certificate of good standing[8]. However, the only allegation involving these Defendants is that the Defendant Rinaldi (allegedly "on information and belief" with the approval of one or more of the other named natural Defendants) submitted a "Notification of Separation due to Misconduct" to the Academy on or about December 15, 2009. Second Amended Complaint, ¶¶ 48-49. As noted, Plaintiffs have no property claim against the Defendants based on their dismissals, and even Plaintiffs concede that following their dismissals the SPA was required by law to then send a notification containing the reasons for Plaintiffs' terminations to the Criminal Justice Academy. Second Amended Complaint, ¶ 57. Thereafter, it was the *South Carolina Criminal Justice Academy* that then determined whether Plaintiffs were entitled to maintain their certifications. See also Second Amended Complaint, ¶ 60. No named natural Defendant made that determination.

Therefore, even assuming the Court were to determine that the denial *by the Academy* to the Plaintiffs of a certificate of good standing constitutes a cognizable federal "property" claim, the allegations of the Complaint do not establish that any named natural Defendant deprived them of that property right, as the decision made by the Defendants (to terminate Plaintiffs' employment based on alleged misconduct) does not give rise to a property claim. Newton, 2011 WL 4435761, at * 3; see Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts against a named Defendant sufficient to state a claim against that Defendant]; Iqbal,

---

[8]Plaintiffs contend that, pursuant to Board of Regents v. Roth, 408 U.S. 564 (1972), a state licensing requirement can create a cognizable property interest, a denial of which is subject to the constraints of due process.

11



129 S.Ct. at 1949 [Plaintiff must state a plausible claim for relief against a named Defendant]; Frey v. City of Herculaneum, 44 F3d 667, 671 (8th Cir. 1995)["Complaint must contain facts which state a claim [against a named Defendant] as a matter of law and must not be conclusory"]. Hence, Plaintiff's property claim against these Defendants is without merit.

**Liberty Claim**. With respect to Plaintiffs' "liberty" claim, to establish such a claim an employee must initially show that their employer made statements regarding the employee "that: 1) placed [a] stigma on [the employee's] reputation; 2) were made public by the employer; 3) were made in conjunction with [the employee's] termination or demotion; and 4) were false". Newton, 2011 WL 4435761, at * 3, citing Sciolino v. City of New Port News, Virginia, 480 F.3d 642, 646 (4th Cir. 2007). Plaintiffs allege that the submission of the misconduct report by the Defendants to the Criminal Justice Academy deprived them of liberty by placing a stigma on their reputations, which has been and will continue to be disseminated to the relevant "public"; that is, prospective law enforcement employers. Second Amended Complaint, ¶ 52.

This same claim has already been rejected in other decisions in this District. Cf. Bell v. Town of Port Royal, South Carolina, 586 F.Supp. 2d 498, 514-519 (D.S.C. 2008); Newton, 2011 WL 4435761, at * 3. While an employee, even an at-will employee, may establish a due process claim based on the deprivation of a liberty interest where an employer has deprived the employee of the freedom to take advantage of other employment opportunities (here, as alleged by the Plaintiffs, through the providing of a misconduct form to the Criminal Justice Academy), it has been conclusively determined in other cases in this District that the providing of such information to the Criminal Justice Academy does not constitute a deprivation of any such liberty interest, because the disclosure at issue to the Academy [the sending of the required notification] is not a "public" disclosure for purposes of establishing the deprivation of a liberty interest. Newton, 2011 4435761, at * 3; Bell, 586 F.Supp. 2d at 519-521 [Holding that such disclosures made to the Academy are not "public" for purposes of a liberty claim]. The undersigned can find no rationale in Plaintiffs' arguments to disregard the rulings or legal analysis in these other cases. Therefore, Plaintiffs' liberty



claim is also without merit. Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

In sum, the Defendants are entitled to dismissal of Plaintiff's Third Cause of Action alleging a violation of their property and liberty interests without due process of law in violation of the Fourteenth Amendment.

## Conclusion

Based on the foregoing, is recommended that the Defendants' motion to dismiss Plaintiffs' Second and Third Causes of Action be **granted**, and that these causes of action be **dismissed**. Further, since Plaintiffs' Third Cause of Action is the only cause of action naming the natural Defendants as party Defendants, these Defendants should be **dismissed** as party Defendants in this case, **in toto**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 13, 2012
Charleston, South Carolina

13



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

